**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

KATHERINE BUNTING,
    Appellant,

   v.

DEPARTMENT OF JUSTICE,
    Agency.

DOCKET NUMBER
PH-0752-23-0085-I-1

DATE:  November 20, 2025

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Peter M. Whelan, Esquire, Washington, D.C., for the appellant.

Luke Archer, Springfield, Virginia, for the agency.

## BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

## FINAL ORDER

The agency has filed a petition for review of the initial decision, which made the following findings:  (1) the agency proved the unacceptable performance charge by substantial evidence; (2) the appellant proved her failure to accommodate disability discrimination claim; (3) she did not prove her claim of retaliation for equal employment opportunity (EEO) activity; and (4) the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

removal action should be reversed. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to supplement the administrative judge's analysis of the appellant's failure to accommodate claim and to explicitly find that the appellant is a qualified individual with a disability. Except as expressly MODIFIED in this regard, we AFFIRM the initial decision.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant has not filed a cross petition for review and has not challenged the administrative judge's conclusions that the agency proved by substantial evidence the elements of an unacceptable performance charge and that she did not prove her claim of retaliation for prior EEO activity. We affirm the initial decision in this regard. The only issue before the Board is the

administrative judge's adjudication of the appellant's failure to accommodate disability discrimination claim.[2] Petition for Review (PFR) File, Tab 1 at 18-38.

The Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28. The Rehabilitation Act has incorporated the standards of the Americans with Disabilities Act, as amended by the Americans with Disabilities Amendments Act. *Id.* Therefore, the Board applies those standards to determine if there has been a Rehabilitation Act violation. *Id.* An agency is required to make reasonable accommodations to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that the accommodation would cause an undue hardship on its business operations. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014); 29 C.F.R. § 1630.9(a). An appellant may establish a disability discrimination claim based on failure to accommodate by proving the following by preponderant evidence: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability, as defined by 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide her a reasonable accommodation. *Miller*, 121 M.S.P.R. 189, ¶ 13.

The parties do not dispute that the appellant proved that she had numerous medical conditions and she was an individual with a disability. Initial Appeal File (IAF), Tab 76, Initial Decision (ID) at 21-22 & n.11. We also agree with the administrative judge that the agency did not provide the appellant with a gliding work schedule, telework (in the manner approved by the agency), and extra time

---

[2] We deny the appellant's motion to dismiss the agency's petition for review for failure to provide interim relief. Petition for Review File, Tab 4. The issuance of our final decision in this matter renders moot any dispute concerning the agency's compliance in this regard. *Owens v. Department of Homeland Security*, 2023 MSPB 7, ¶ 10. If the appellant believes that the agency is in noncompliance with the Board's Final Order, she may file a petition for enforcement in accordance with the instructions provided below.

for non-exigent assignments. ID at 23-26. The agency asserts on review that the administrative judge did not expressly analyze whether the appellant satisfied her burden to prove that she was a qualified individual with a disability. PFR File, Tab 1 at 18. We do so now.

A qualified individual with a disability is an individual who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); *see* 42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28. The appellant's prior performance evaluations reflect that she satisfactorily performed in the Intelligence Research Specialist position for more than 15 years.[3] ID at 20 n.9; IAF, Tab 14 at 435.

In the initial decision, the administrative judge found that the essential functions of the position did not include Accountability for Results, a critical element, and two tasks contained therein, responding constructively to managerial criticism and independently setting and meeting deadlines. ID at 19-20. The agency challenges the administrative judge's assessment of these essential functions on review. PFR File, Tab 1 at 18, 22-25. Even if we assume for the purposes of our analysis that Accountability for Results and the two tasks contained therein were essential functions of the position, a different outcome is not warranted.

We modify the initial decision to explicitly find that the appellant is a qualified individual with a disability because we agree that she proved that she could perform the essential functions of the position with accommodations such

---

[3] We have considered the agency's assertion that the administrative judge's reliance on the appellant's prior performance evaluations was misplaced, and it was not "legally required to overlook" her past poor performance. PFR File, Tab 1 at 26-27. Indeed, as part of its burden in an unacceptable performance action, the agency was required to prove by substantial evidence that the appellant's performance was unacceptable during the appraisal period, and we agree with the administrative judge that it met its burden in this regard. ID at 11; *see Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15.

as extensions of time to perform non-exigent assignments, a gliding work schedule, and ample telework—accommodations that the agency approved during the performance improvement plan (PIP) period—but her supervisor did not provide to her during that period. ID at 21-26. We also agree with the administrative judge that, if the appellant had been given such accommodations during the PIP, she would have passed the PIP. ID at 23-26. We have considered the agency's arguments regarding the administrative judge's assessment of each of the approved accommodations, but a different outcome is not warranted.

*Telework*

The administrative judge noted that the agency disallowed telework before it placed the appellant on a PIP, then restored it 40 days into the PIP, and she found that the appellant did not have the benefit of any telework during the PIP period. ID at 25. The administrative judge also found that the appellant was not offered more than 2 days per week of telework, which was less than that described in the approved accommodation.[4] *Id.* She further found that scheduled and ad hoc telework would have assisted the appellant in passing the PIP. ID at 26.

On review, the agency asserts that the administrative judge erred because the appellant was on maximum telework for 7 months during fiscal year 2021 (from October 2020 to April 2021) and her performance was unacceptable, even though the supervisor provided some positive feedback during this time. ID at 25-26; PFR File, Tab 1 at 30. Indeed, we have affirmed—and the appellant does not challenge on review—the administrative judge's finding that the agency proved by substantial evidence that her pre-PIP performance was unacceptable. ID at 11. However, the fact that the appellant's performance was unacceptable during this time frame—when she was on maximum telework—does not warrant a different outcome on her failure to accommodate claim. During the earlier time

---

[4] The agency's Health Services approved "[m]aximum ongoing, recurring telework" and "[s]ituational telework if medically necessary." IAF, Tab 43 at 47.

frame, the appellant did not have the additional accommodations that the agency approved during the PIP, such as extra time for non-exigent assignments and a gliding work schedule. Therefore, we cannot conclude that the appellant would have performed unsuccessfully during the PIP based on her unacceptable performance during this earlier time frame.

The agency also challenges the administrative judge's finding that the appellant "did not have the benefit of any telework during the PIP." PFR File, Tab 1 at 31; ID at 25. As support for this argument, the agency explains that it was under no obligation to provide the appellant with telework as an accommodation "before she submitted a complete [reasonable accommodation] package, which she did not do until *after* the issuance of the PIP,"[5] and it provided the appellant with 2 days per week of scheduled telework and ad hoc telework. PFR File, Tab 1 at 31 (emphasis in original). These arguments are not persuasive.

Notably, the appellant told the reasonable accommodation program manager (RAPM) that she would provide documentation to support her accommodation requests as soon as she received them because she did not "want to delay the process" and she knew that documentation from one provider would take a long time. IAF, Tab 40 at 40. Despite having given medical documentation to the RAPM as early as September 1, 2021, to support her request for telework as an accommodation, the RAPM did not forward any of the appellant's medical documentation to Health Services until November 16, 2021, at the earliest. IAF, Tab 68 at 431-32 (testimony of the RAPM). Between November 16 and 30, 2021, Health Services determined that the appellant was

---

[5] The agency decided to wait to forward the appellant's documentation for a "complete RA package," i.e., after she submitted all of her medical documentation. IAF, Tab 68 at 424-27 (testimony of the reasonable accommodation program manager). However, there was nothing that required it to wait for a "complete [] package" before taking action on any of her reasonable accommodation requests once she started submitting documentation.

eligible for "[m]aximum ongoing, recurring telework." IAF, Tab 43 at 46-47; ID at 5-7. However, the appellant's supervisor, who knew on November 30, 2021, that telework had been approved as an accommodation, delayed communicating this approval to the appellant until December 10, 2021, nearly 6 weeks into the PIP.[6] IAF, Tab 13 at 127. Then, the supervisor rejected the appellant's request for telework on Mondays and Fridays and only permitted her to telework 2 days per week and on an ad hoc basis as medically necessary. ID at 25-26; IAF, Tab 68 at 365 (testimony of the supervisor). The agency concedes that the appellant only worked "a few days" during the PIP period between December 10, 2021, and January 5, 2022, because of the two Federal holidays and the appellant's annual leave. PFR File, Tab 1 at 35. We are not persuaded that the "few days" of telework provided by the agency, which was inconsistent on its face with the accommodation approved by Health Services, warrants a different outcome on this issue.

*Extra time*

The agency approved, as an accommodation, "[a]llowing extra time, as needed, to meet deadlines in non-exigent circumstances." IAF, Tab 43 at 47. In the initial decision, the administrative judge noted that the supervisor testified that she "always" gave the appellant extra time on assignments, but the administrative judge found that this testimony was undermined by evidence that the supervisor avoided discussing extra time with the appellant as an accommodation. ID at 24; *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (stating that any prior inconsistent statements by the witness could help resolve credibility issues). Further, the administrative judge noted that the supervisor did not explain how she gave the appellant extra time on various PIP assignments; rather, the supervisor testified that she waited until she deemed the assignment late and then set a deadline, even though no investigator had

---

[6] The supervisor also delayed communicating approval of the appellant's other requested accommodations until December 21, 2021. IAF, Tab 44 at 18.

complained about the appellant missing a deadline and other Intelligence Research Specialists usually set their own deadlines in cooperation with the investigators. ID at 24; IAF, Tab 68 at 138-39 (testimony of the supervisor). The administrative judge found that the agency did not approve or provide additional time to the appellant and her perceived slowness was a major tension between the appellant and her supervisor. ID at 24. The administrative judge also found that communicated extensions of time in advance of a set deadline would have assisted the appellant with some of her medical conditions, the appellant proved that she was denied extensions of time as an accommodation, and such an accommodation would have helped her pass her PIP. *Id.*

The agency asserts on review that the administrative judge erred when she concluded that it denied the appellant extra time on assignments and she would have performed successfully during the PIP with such an accommodation. PFR File, Tab 1 at 32-34. In pertinent part, the agency asserts that the appellant's medical documentation did not specify any particular manner in which the extra time accommodation should be effectuated. *Id.* at 32. The agency further states that, regardless of how the supervisor extended deadlines, the appellant received extensions, she did not produce successful work with these extensions, and some assignments were still outstanding at the conclusion of the PIP period. *Id.* at 32-33.

The agency's assertions are not persuasive. The supervisor's apparent decision to unilaterally determine when an assignment was late and then set deadlines, without accounting for input from any diversion investigator or the non-exigent nature of most diversion investigations, seems unwarranted and arbitrary. ID at 19, 24; IAF, Tab 68 at 41 (testimony of the appellant) (explaining that diversion investigations are "seldom exigent"). Importantly, the administrative judge noted that there was no evidence that the appellant performed her functions so slowly that the data was "ultimately useless in assisting investigative agents" for any assignment listed in her PIP. ID

at 21 n.10. In fact, the administrative judge noted that the record did not indicate that the appellant missed any investigator's deadline. *Id.* We discern no error with the administrative judge's findings and conclusions in this regard.

*Gliding work schedule*

The appellant requested, as an accommodation, a gliding work schedule.[7] IAF, Tab 40 at 28. Health Services approved, as an accommodation, "adjustments to scheduled work hours as can be supported" due to medical documentation, which, among other things, stated that the appellant's chronic medical conditions impaired her ability to maintain a regular 9:00 a.m. to 5:00 p.m. work schedule and/or commute to work in the early morning. IAF, Tab 43 at 47. The administrative judge found that the agency denied the appellant's request for a gliding schedule, and such a flexible schedule would have helped her pass the PIP. ID at 24-25.

On review, the agency challenges the administrative judge's findings in this regard. PFR File, Tab 1 at 34-38. In particular, the agency asserts that the administrative judge wrongly assumed that "only a 'gliding work schedule' constituted a 'flexible work schedule.'" *Id.* at 34. The agency asserts that it provided the appellant a flexible schedule and it was not required to offer her an open-ended schedule, which would require it to "accept unreliable attendance." *Id.* at 35. These assertions are not persuasive.

The appellant's supervisor testified that she was told that a gliding schedule was not available "to core employees because [they] have [their] core work hours." IAF, Tab 68 at 359 (testimony of the supervisor); ID at 25. However, this rationale is insufficient to justify a denial of this requested accommodation. *See, e.g.,* Equal Employment Opportunity Commission

_____

[7] A standard schedule was 8:30 a.m. to 5:00 p.m. each day; a "flexitour schedule," which the appellant had, was 9:30 a.m. to 6:00 p.m. each day; and a gliding schedule would allow her to have a different start time each day, including past 6:00 p.m. on occasion. IAF, Tab 68 at 457-58 (testimony of the appellant).

Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (Oct. 17, 2002), 2002 WL 31994335 at *18 ("An employer must provide a modified . . . schedule when required as a reasonable accommodation, absent undue hardship, *even if it does not provide such schedules for other employees*.") (emphasis supplied); *see* 42 U.S.C. § 12111(9)(B) (stating that a reasonable accommodation may include a "modified work schedule"). The agency has identified no undue hardship in this regard. Indeed, because the appellant already had a flexitour work schedule and because she sought further adjustments to her work schedule as a reasonable accommodation, it was incumbent on the agency—either the supervisor or the RAPM—to evaluate what additional schedule flexibilities it could provide to her. Moreover, we are not persuaded that the appellant's request for a gliding schedule constituted an "open-ended schedule," which would have required the agency to "accept unreliable attendance." PFR File, Tab 1 at 35. Any agency concerns about the reliability of appellant's attendance with a gliding work schedule could have been ameliorated by requiring that the appellant, among other things, advise her supervisor when she started and stopped working each day.

We have considered the agency's remaining assertions on review, but we conclude that they do not warrant a different outcome. For example, the agency asserts that the appellant could not prove that she could have drafted reports of investigation and an intelligence chart, which were part of her PIP goals, even with the approved accommodations because the administrative judge found that the agency proved by substantial evidence that the appellant did not meet the PIP goals. PFR File, Tab 1 at 27 (citing ID at 14). We disagree. The fact that the administrative judge found that the agency proved by substantial evidence[8] that the appellant's performance remained unacceptable in at least one critical element

---

[8] Substantial evidence is defined as the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree. 5 C.F.R. § 1201.4(p). Substantial evidence is a lower standard of proof than preponderant evidence. *Id.*

after the PIP does not preclude a finding that the appellant met her burden to prove by preponderant evidence[9] that the agency failed to accommodate her. Indeed, in the administrative judge's analysis of the appellant's PIP and post-PIP performance, she noted that the appellant presented a detailed defense to each of the findings in the notice of proposed removal. ID at 14. In particular, the administrative judge acknowledged the appellant's position that the supervisor's instructions were poorly or unfairly conceived and impossible to achieve, and she found the appellant's rebuttals "detailed and well-reasoned and not less convincing than the agency's evidence." *Id.*

## ORDER

We ORDER the agency to cancel the removal and retroactively restore the appellant, effective May 3, 2022.[10] *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

---

[9] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[10] In the initial decision, the administrative judge ordered the agency to cancel the removal and to retroactively restore the appellant, effective May 3, 2024. ID at 26. We clarify that the effective date is May 3, 2022.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.

You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT**
**REGARDING YOUR RIGHT TO REQUEST**
**COMPENSATORY DAMAGES**

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a. The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204. If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:      _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 5) Certified timecards/corrected timecards. **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.
2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.